| | |
|---|---|
| 1 | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| |   A Limited Liability Partnership |
| 2 |   Including Professional Corporations |
| 3 | GREG S. LABATE, Cal. Bar No. 149918 |
| | glabate@sheppardmullin.com |
| 4 | 650 Town Center Drive, 10th Floor |
| | Costa Mesa, California 92626-1993 |
| 5 | Telephone:    714.513.5100 |
| | Facsimile:    714.513.5130 |

Attorney for Defendant THE RITZ-CARLTON HOTEL COMPANY, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNIE DOZIER, an individual and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>THE RITZ-CARLTON HOTEL COMPANY, LLC, a Delaware Corporation and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.<br><br>San Francisco Superior Court Case No. CGC-22-601523<br><br>State Court Complaint Filed: September 1, 2022<br><br>**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1332(d), 1441, AND 1446**<br><br>**(CLASS ACTION FAIRNESS ACT)** |

# **TABLE OF CONTENTS**

**Page**

I. STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ................................................................................................................... 1

II. STATUS OF PLEADINGS ................................................................................................. 2

III. JURISDICTION PURSUANT TO CAFA IS SATISFIED ................................................ 3

    A. Minimum Diversity Of Citizenship Exists Here .................................................... 4

    B. The Amount In Controversy Exceeds The $5,000,000 Requirement Under CAFA ....................................................................................................................... 6

        a. Waiting Time Penalties ............................................................................... 9

        b. Amount In Controversy For Plaintiff's Other Claims ............................. 10

        c. Amount In Controversy For Attorneys' Fees .......................................... 10

    C. No CAFA Exceptions Apply ................................................................................ 11

IV. TIMELINESS OF REMOVAL ........................................................................................ 12

V. NOTICE TO PLAINTIFF AND STATE COURT ........................................................... 12

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant THE RITZ-CARLTON HOTEL COMPANY, LLC ("Defendant") hereby removes the matter filed by Plaintiff Bennie Dozier ("Plaintiff") in the case entitled <u>Bennie Dozier v. The Ritz-Carlton Hotel Company, LLC</u> pending in the Superior Court of the State of California in and for the County of San Francisco, Case No. CGC-22-601523, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. Sections 1332(d), 1441(b), and 1446.

Removal is based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. Sections 1332(d), 1441(b) and 1446, on the following grounds:

I.  **STATEMENT OF JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

1. CAFA was enacted on February 18, 2005. In relevant part, CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

2. This Court has jurisdiction over this case under CAFA, 28 U.S.C. Section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. Section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members (Complaint, ¶ 22); (2) the primary defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant. Each of these conditions was satisfied at the time this action was initiated and now at the time of removal.

3. Further, while there are a number of exceptions to this rule of original jurisdiction contained in 28 U.S.C. section 1332(d)(3)-(5), none of the exceptions is applicable here, as demonstrated hereafter.

4. Venue is proper in this Court pursuant to 28 U.S.C. Sections 84(c) and 1391.

5.     As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

**II.     STATUS OF PLEADINGS**

6.     On or about September 1, 2022, Plaintiff filed a complaint in the Superior Court of the State of California in and for the County of San Francisco, entitled <u>Bennie Dozier v. The Ritz-Carlton Hotel Company, LLC</u>, San Francisco County Superior Court Case No. CGC-22-601523 ("Complaint").

7.     A copy of the Complaint and related documents were served on Defendant on September 20, 2022.  True and correct copies of the Complaint, Civil Case Cover Sheet, Summons, and Notice of Case Management Conference served on Defendant are attached hereto, collectively, as **Exhibits A to D**.  The Proof of Service of Summons is attached hereto as **Exhibit E**.

8.     Prior to filing this Notice of Removal, Defendant filed its Answer to the Complaint in San Francisco County Superior Court and served its Answer on Plaintiff.  Attached hereto as **Exhibit F** is a true and correct copy of Defendant's Answer to the Complaint.

9.     Plaintiff asserts in his Complaint that Defendant employed him and other persons in the capacity of non-exempt positions throughout the state of California.  <u>See</u> Complaint, ¶¶ 11, 21.

10.     This action has been filed as a California class action under California Code of Civil Procedure Section 382.  <u>See</u> Complaint, ¶ 21.  California Code of Civil Procedure Section 382 is a state statute authorizing an action to be brought by one or more representative persons as a class action.

11.     The Complaint alleges that the "members of the class exceed 100 persons."  <u>See</u> Complaint, ¶ 22.  On the basis of its own investigation, Defendant determined there are more than 100 current and former non-exempt employees who worked for it in California during the four-year period prior to the filing of the Complaint.  Therefore, Plaintiff's proposed class consists of at least 100 members now at the time of removal and at the initiation of this civil action.  <u>See</u> Complaint, ¶ 14.

12. Plaintiff's Complaint asserts eight (8) causes of action: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide duty-free meal periods; (4) failure to provide duty-free rest periods; (5) failure to provide vacation wages; (6) failure to reimburse business expenses; (7) failure to pay all wages owed upon termination; and (8) unfair business practices, in violation of Cal. Business and Professions Code Section 17200, et seq.[1]

### III. JURISDICTION PURSUANT TO CAFA IS SATISFIED

13. Pursuant to Section 4 of CAFA, 28 U.S.C. Section 1332(d)(2):

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

Under CAFA, a removing defendant need not submit any evidence of the facts establishing jurisdiction in its notice of removal. Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 551 (2014) (A notice of removal "need not contain evidentiary submissions."); Arias v. Residence Inn by Marriot, 936 F.3d 920, 922 (9th Cir. 2019) (holding that "a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements"). Rather, "[a] defendant's notice of removal need include only a plausible allegation that the jurisdictional facts exists." Id. at 554. Evidence is required "only when the plaintiff contests, or the court questions, the defendant's allegation." Id. (emphasis added).

14. The United States Supreme Court in Dart Cherokee held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," adding that "CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" Id. Following Dart Cherokee, the Ninth Circuit has directed the district courts to

---

[1] The damages calculations herein only include calculations of Plaintiff's waiting time penalty claim. A full calculation of the alleged damages of each and all of Plaintiff's claims would be substantially higher.

-3-

"interpret CAFA's provisions under section 1332 broadly in favor of removal . . . ." Jordan v. Nationstar Mortg. LLC, 781 F.3d 1178, 1184 (9th Cir. 2015) (emphasis added); see also Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively").  In Bridewell-Sledge v. Blue Cross, 798 F.3d 923 (9th Cir. 2015), the Ninth Circuit held that under Dart Cherokee, the district court erred "in its remand orders by applying a 'strong presumption against removal jurisdiction.'" Moppin v. Los Robles Reg'l Med. Ctr., 2015 WL 5618872, at *2 (C.D. Cal. Sept. 24, 2015) ("[N]o presumption against removal exists in cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

### A.     Minimum Diversity Of Citizenship Exists Here

15.     CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state.  See 28 U.S.C. § 1332(d).

16.     Plaintiff is a resident and citizen of California.  See Complaint ¶ 11; Declaration of Kristen Palagano ("Palagano Decl."), ¶ 7.  At all times set forth in the Complaint, Plaintiff worked for Defendant in California.  See Complaint, ¶ 11.  Although no evidence of domicile is required at the notice of removal stage (Dart Cherokee, 135 S. Ct. at 554), "[p]roof of residence in a state is usually thought prima facie evidence of domicile." Bradley Min. Co. v. Boice, 194 F.2d 80, 84 (9th Cir. 1951); see also Anderson v. Watt, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary . . . ."); Barborsa v. Transp. Drivers, Inc., 2015 WL 9272828, at *2 (C.D. Cal. Dec. 18, 2015) ("[A] person's residence is prima facie evidence of [their] place of domicile for purposes of diversity jurisdiction[.]") (quotations omitted).  Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." Mondragon v. Capital One Auto Fin., 736 F.3d 880, 885 (9th Cir. 2013).

17. Where there are no allegations of citizenship of certain parties in the complaint, a removing party may introduce "objective facts" in support of removal that would tend to show the domicile or citizenship of a party in a particular state. Lew v. Moss, 797 F.2d 747, 749 (9th Cir. 1986) ("[T]he determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes[.]").

18. Here, Plaintiff worked and lives in California. See Complaint, ¶ 11; Palagano Decl., ¶ 7. Accordingly, Plaintiff is a citizen of California for purposes of determining diversity. See 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which they are domiciled); State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994) (residence is prima facie evidence of domicile for purposes of determining citizenship).

19. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. See 28 U.S.C. § 1332(c)(1).

20. The U.S. Supreme Court has clarified the definition of a corporation's "principal place of business." In Hertz Corp. v. Friend, 130 S. Ct. 1181, 1192 (2010), the United States Supreme Court concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination." Id.

21. Under the foregoing standard, the facts here clearly establish that Defendant is now at the time of this removal, and was at the institution of this civil action, a citizen of Delaware and Maryland for purposes of removal. Defendant was incorporated in the State of Delaware, and it maintains its corporate headquarters in Bethesda, Maryland. See Complaint ¶ 12; Declaration of Andrew Wright ("Wright Decl."), ¶¶ 3-4. It is Bethesda, Maryland where each of Defendant's

high-level officers direct, control, and coordinate each Defendant's activities. See id., ¶ 4. Defendant's executive operations are managed from their corporate headquarters. Id. Accordingly, Defendant's principal place of business is in Maryland. Id.; 28 U.S.C. § 1332(c)(1).

22. In accordance with the foregoing, Plaintiff is a citizen of the State of California, while Defendant is a citizen of the States of Delaware and Maryland, which are the state of incorporation and the principal place of business for Defendant. Thus, the minimum diversity requirement under CAFA is satisfied.

23. Pursuant to 28 U.S.C. Section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. Section 1332. Fristoe v. Reynolds Metals Co., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); Soliman v. Philip Morris, Inc., 311 F.3d 966, 971 (9th Cir. 2002) (citizenship of fictitious defendants disregarded for removal). Thus, the existence of Doe defendants 1 through 50, does not deprive this Court of jurisdiction.

**B.      The Amount In Controversy Exceeds The $5,000,000 Requirement Under CAFA**

24. Without making an admission of liability or damages with respect to any aspects of this case or the proper legal test(s) applicable to Plaintiff's allegations on behalf of herself and the putative class, the amount in controversy exceeds the jurisdictional minimum of this Court as detailed below.

25. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." Dart Cherokee, 135 S. Ct. at 554. Moreover, a defendant need not set forth evidence establishing the amount in its notice of removal. Id. A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." McCraw v. Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish the amount in controversy by "provid[ing] only a short and plain statement of the grounds for removal." Ehrman v. Cox Commc'ns, Inc., 932 F.3d 1223, 1225 (9th Cir. 2019); see also Dart Cherokee, 135 S. Ct. at 547 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and

evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations"). Here, Defendant alleges there is more than $5,000,000 in controversy.

26. CAFA authorizes the removal of class actions in which, among the other factors mentioned above, the aggregate amount in controversy for all class members exceeds five million dollars ($5,000,000.00). See 28 U.S.C. § 1332(d). By demonstrating that the actual amount in controversy exceeds the threshold, Defendant does not concede the validity of Plaintiff's claims or the likelihood that Plaintiff will certify any class or recover anything.

27. "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." Henry v. Cent. Freight Lines, Inc., 692 F. App'x 806, 807 (9th Cir. 2017). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis v. Verizon Commc'ns., Inc., 627 F.3d 395, 400 (9th Cir. 2010); Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe . . . .") (aff'd by 631 F.3d 1010 (9th Cir. 2011)); Muniz v. Pilot Travel Centers LLC, 2007 WL 1302504, at *3 (E.D. Cal. Apr. 30, 2007) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.").

28. In the Ninth Circuit, the amount in controversy is determined "at the time of removal." Kroske v. US Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005) (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376 (9th Cir. 1997). In Chavez v. JPMorgan Chase, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat the amount in controversy is assessed at the time of removal does not mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." Id. at 417. Chavez held that "the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." Id. at

-7-

414-15.  The Ninth Circuit again affirmed these principles in <u>Fritsch v. Swift Transp. Co. of Ariz., LLC</u>, 899 F.3d 785 (9th Cir. 2018).

29.     Defendant provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction.  Defendant makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims.  Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims.

30.     Plaintiff's Complaint defines the putative class ("Proposed Putative Class") as: "all current and former hourly paid, non-exempt employees employed by [Defendant] at [Defendant's] California hotel properties during the period from four years prior to the filing of this Complaint to the present."  <u>See</u> Complaint, ¶ 21.

31.     Defendant independently determined based on its own business records that the Plaintiff's Proposed Putative Class is comprised of at least 7,037 non-exempt employees of Ritz-Carlton.  <u>See</u> Palagano Decl., ¶ 4.

32.     Defendant independently determined based on its own business records that during the preceding three years prior to the filing of this action, <u>i.e.</u>, September 1, 2019 to present, Defendant paid Proposed Putative Class members at least minimum wage, which as of January 1, 2019 was at least $12.00 per hour in California, and higher if a local minimum wage ordinance applied.  Many of Defendant's non-exempt hourly employees from September 1, 2019 to present were paid an hourly base wage much higher than $12.00 per hour.  <u>Id.</u>, ¶ 5.

33.     Defendant independently determined based on its own business records that between September 1, 2019 and present, at least 3,435 members of the Proposed Putative Class separated from employment with Defendant.  <u>Id.</u>, ¶ 6.

### a. Waiting Time Penalties

34. Under Cal. Labor Code Section 203, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201 [or] 202 . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

35. Plaintiff alleges that Defendant willfully failed to pay wages to former employees in accordance with Cal. Labor Code Sections 201 and 202. Pursuant to Cal. Labor Code Section 203, Plaintiff seeks waiting time penalties at the employees' regular rate of pay, for a penalty of up to 30 days' wages. See Complaint, ¶¶ 74-82.

36. The statute of limitations for a claim under Cal. Labor Code Section 203 is three years. Pineda v. Bank of Am. N.A., 50 Cal. 4th 1389, 1398 (2010). There were at least 3,435 Proposed Putative Class members whose employment with Defendant terminated between September 1, 2019 and present. See Palagano Decl., ¶ 6.

37. Therefore, Defendant independently determined based on its own business records and on the allegations contained within Plaintiff's Complaint that Plaintiff alleged an amount in controversy for waiting time penalties damages (exclusive of interest) in the amount of **$9,892,800** accrued as of present ($12.00 average lowest rate of pay * 8 hours per day * 30 days * 3,435 former alleged Proposed Putative Class members).

38. Defendant is and would be justified in using a 100% violation rate in computing the amount in controversy based on the nature of Plaintiff's allegations that "Defendant failed to pay Plaintiff and other members of the Class all wages earned and unpaid prior to termination in accordance with [Cal.] Labor Code Section 201 or 202." Complaint, ¶ 77; see also Coleman, 730 F. Supp. 2d at 1149 ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); Sanchez v. Russell Sigler, Inc., 2015 WL 12765359, *6 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods."); Mortley v. Express Pipe & Supply Co., 2018 WL 708115, at *4 (C.D.

-9-

Cal. Feb. 5, 2018) (100% violation rate proper when allegations are "routine and systematic violations").

### b. Amount In Controversy For Plaintiff's Other Claims

39. In addition to the claims identified above, Plaintiff also alleges that he and the Proposed Putative Class members were not provided meal and rest periods; paid minimum, vacation, and overtime wages; and reimbursed for business expenses, in accordance with California law. See Complaint, ¶¶ 32-73.

40. Cal. Labor Code Section 1194 states that an employee receiving less than the legal minimum wage or the legal overtime wage is entitled the recover the amount owed in a civil action.

41. Thus, Plaintiff's claims for failure to provide meal and rest periods, unpaid minimum, vacation, and overtime wages, and failure to reimburse business expenses further increases the amount in controversy beyond the jurisdictional minimum of $5,000,000.

### c. Amount In Controversy For Attorneys' Fees

42. Plaintiff also alleges an entitlement to attorneys' fees. See Complaint, Prayer at ¶ 13. Under Ninth Circuit precedent, a plaintiff's claim for attorneys' fees must be included in the amount in controversy. Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). In Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.

43. Courts may use a 25% benchmark of total recovery when estimating the attorneys' fees in controversy. Garibay v. Archstone Communities LLC, 539 F. App'x 763, 764 (9th Cir. 2013); Rodriguez v. Cleansource, Inc., 2014 WL 3818304, at *4 (S.D. Cal. Aug. 4, 2014); Marshall v. G2 Secure Staff, LLC, 2014 WL 3506608 (C.D. Cal. July 14, 2014); Jasso v. Money Mart Exp., Inc., 2012 WL 699465 (N.D. Cal. Mar. 1, 2012); Ramos v. Schenker, Inc., 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018); Ramirez v. Benihana Nat'l Corp., 2019 WL 131843, at

-10-

1   *2 (N.D. Cal. Jan. 8, 2019); see also Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"). Thus, an additional minimum amount of **$2,473,200** must be included in the amount in controversy ([at least $9,892,800 in alleged waiting time penalties]) x 25% = $2,473,200. This represents the potential attorneys' fees on only one of Plaintiff's claims.

44.  And the same amount for alleged attorneys' fees is in controversy using the "lodestar" method of fee computation. Chavez v. Netflix, Inc., 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery[.]"); Smith v. CRST Van Expedited, Inc., 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013) ("California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent[.]").

45.  For all of the forgoing reasons, Defendant alleges that the amount placed in controversy by Plaintiff's Complaint is at least **$12,366,000** which is significantly greater than the jurisdictional minimum of $5,000,000 required by CAFA, both at the time removal and at the institution of this civil action. The amount in controversy requirement for CAFA is therefore satisfied.

**C.   No CAFA Exceptions Apply**

46.  CAFA contains a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. Sections 1332(d)(3)-(5). However, none of these exceptions is applicable here. The party resisting removal has the burden of proving the existence of a CAFA exception. King v. Great Am. Chicken Corp., 903 F.3d 875, 878 (9th Cir. 2018).

47.  The first is a discretionary exception based on the number of putative class members found in the state where the action was filed. See 28 U.S.C. § 1332(d)(3). However, the exception only applies where the "primary defendants are citizens of the State in which the action was originally filed." Here, the action was originally filed in California and, as noted above, Defendant is not a citizen of California. Thus, this exception does not apply.

48.     Similarly, 28 U.S.C. Section 1332(d)(4) contains an exception to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed.  However, this exception, too, only applies where all primary defendants, or at least one defendant whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class, is a "citizen of the State in which the action was originally filed."  See 28 U.S.C. §§ 1332(d)(4)(A)(i)(II),1332(d)(4)(B).  Given that this action was originally filed in California, and that Defendant, which is the only defendant in this lawsuit and whose alleged conduct forms a significant basis for the claims asserted by the putative class, is not a California citizen, these exceptions also do not apply.

49.     Finally, 28 U.S.C. Section 1332(d)(5) presents two additional exceptions for defendants who are government entities, or putative classes which number less than 100 in the aggregate.  See 28 U.S.C. §§ 1332(d)(5)(A)-(B). Given that Defendant is not a governmental entity, and that the proposed class numbers are alleged to be greater than 100 individuals (and over 7,000), these exceptions also do not apply.

## IV.    TIMELINESS OF REMOVAL

50.     As required by 28 U.S.C. Section 1446(b), this Notice of Removal is timely filed within thirty (30) days after service of the Complaint on September 20, 2022.  Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) (thirty-day window to remove does not run until formal service is complete under state law).

## V.     NOTICE TO PLAINTIFF AND STATE COURT

51.     Contemporaneous with the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be served on Plaintiff's counsel of record, at Marlin & Saltzman, LLP, 29800 Agoura Road, Suite 210, Agoura Hills, California 91301 and Law Offices of Peter M. Hart, 12121 Wilshire Boulevard, Suite 525, Los Angeles, California 90025.  In addition, a copy of this Notice of Removal will be filed with the Clerk of the Court for the Superior Court of the County of San Francisco, California.

52. In compliance with 28 U.S.C. Section 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as Exhibits A through F.

WHEREFORE, having provided notice as is required by law, the above-entitled action should be removed from the Superior Court for the County of San Francisco to this Court.

Dated: October 20, 2022

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Greg S. Labate*
GREG S. LABATE
Attorney For Defendant
THE RITZ-CARLTON HOTEL COMPANY, LLC

s